UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
AT INDIANAPOLIS DIVISION

| In Re: | Case No.: 14-06827 |
|---|---|
| AVANTI RENEE MCDAMON-FREEMAN AKA AVANTI RENEE FREEMAN | Chapter 7 |
| Debtor | Judge: JAMES K. COACHYS |

**MOTION FOR RELIEF FROM AUTOMATIC STAY AND/OR ABANDONMENT OF PROPERTY AND NOTICE OF OBJECTION DEADLINE WITH 30-DAY WAIVER**

The creditor, PennyMac Loan Services, LLC, hereby moves the Court, pursuant to 11 U.S.C. §362(d) and §554, to (lift the automatic stay and/or abandon from the estate) the following real property: 8109 Birchfield Drive, Indianapolis, IN 46268 – referred to as the "Property."

In support of the motion, the creditor states the following:

1. The debtor(s) filed a Chapter 7 case on July 22, 2014--referred to as the "Petition Date."

2. As of the Petition Date, the creditor was the holder of a claim secured by the Property, more particularly described in the:

    Mortgage, – a copy of which is attached as "Exhibit A";

3. The above described(mortgage/security interest was given to secure a promissory note – referred to as the "Note" - dated July 12, 2004, and made payable to the creditor in the original sum of $143,724.00, a copy of which is attached as "Exhibit "B".

4. The creditor perfected an interest in the Property, as shown in a:

    Mortgage, filed with the Marion County Recorder's office on August 9, 2004
    Evidence of perfection is attached as "Exhibit A";

5. *As of the date of the filing of this motion*, the outstanding principal of the Note was $121,984.93 and the outstanding interest was $7,268.25.
6. The Property is(burdensome to the estate or is of inconsequential value and benefit to the estate.  Cause exists to lift the automatic stay since the interest of the creditor is not

    being adequately protected.  Per Debtor's Statement of intent the subject property is to be surrendered.

7. In the event the Order granting creditor's Motion for Relief from Automatic Stay and Abandonment with 30 day Waiver is entered, the provisions of Bankruptcy Rule 4001(a)(3) shall be waived and said Order shall be effective immediately.

8. The creditor hereby waives the right under 11 U.S.C. §362(e) to a hearing on this motion within thirty (30) days of the date it is filed.

**PLEASE TAKE NOTICE THAT** any objection must be filed with the Bankruptcy Clerk within **14 days** of the date of this notice [or such other time period as may be permitted by Fed.R. Bankr.P. 9006(f)].  Those not required or not permitted to file electronically must deliver any objection by U.S. mail, courier, overnight/express mail, or in person at:

**US Bankruptcy Court, Southern District of Indiana, Indianapolis Division**
**116 U.S. Courthouse**
**46 East Ohio Street**
**Indianapolis, IN 46204**

The objecting party must ensure delivery of the objection to the party filing the motion.
**If an objection is NOT timely filed, the requested relief may be granted.**

**WHEREFORE**, the creditor moves the Court to enter an order lifting the stay and granting such other relief as appropriate.

                                                Respectfully submitted,

                                                \_\_/s/ Jerry R. Howard\_\_\_
                                                Jerry R. Howard, Esq. (22051-15)
                                                GERNER & KEARNS CO., L.P.A.
                                                809 Wright`s Summit Parkway, Suite 200
                                                Fort Wright, KY 41011
                                                Phone: (513) 241-7722
                                                Fax: (859) 292-5300
                                                bankruptcies@gernerlaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was served by the method set forth below, upon the below listed parties, on Friday, August 29th, 2014.

**By Notice of Electronic Filing To:**

    John J. Petr, Trustee
    111 Monument Circle Ste. 900 700 Guaranty Building
    Indianapolis, IN 46204

    US Trustee
    101 W. Ohio St., Ste. 1000
    Indianapolis, IN 46204
    ustpregion10.in.ecf@usdoj.gov

    Dana L. Oglesby
    6520 East 82nd Street Suite 101
    Indianapolis, IN 46250
    court@indybankruptcylaw.com

**By United States Mail To:**

    Avanti Renee McDamon-Freeman
    6907 Chrysler Street
    Indianapolis, IN 46268

                                        /s/ Jerry R. Howard
                                      Jerry R. Howard, Esq. (22051-15)
                                      GERNER & KEARNS CO., L.P.A.
                                      809 Wright`s Summit Parkway, Suite 200
                                      Fort Wright, KY 41011
                                      Phone: (513) 241-7722
                                      Fax: (859) 292-5300
                                      bankruptcies@gernerlaw.com

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0756-1<br>Case 14-06827-JKC-7<br>Southern District of Indiana<br>Indianapolis<br>Fri Aug 29 11:51:55 EDT 2014 | American Express<br>PO Box 3001<br>16 General Warren Blvd<br>Malvern, PA 19355-1245 | American Express<br>Po Box 297871<br>Fort Lauderdale, FL 33329-7871 |
| Capital 1 Bank<br>Attn: Bankruptcy Dept.<br>PO Box 30285<br>Salt Lake City, UT 84130-0285 | (p)CAPITAL ONE<br>PO BOX 30285<br>SALT LAKE CITY UT 84130-0285 | Colorado Student Loa/College Assist<br>1560 Broadway<br>Ste. 1700<br>Denver, CO 80202-5159 |
| Colorado Student Loa/College Assist<br>Po Box 1649<br>Denver, CO 80201-1649 | Dept Of Ed/sallie Mae<br>11100 Usa Pkwy<br>Fishers, IN 46037-9203 | Equifax<br>Attn: Bankruptcy Dept.<br>PO Box 740241<br>Atlanta, GA 30374-0241 |
| Experian<br>Attn: Bankruptcy Dept.<br>PO Box 9556<br>Allen, TX 75013 | Feiwell & Hannoy<br>Attn: Bankruptcy Dept<br>251 N Illinois St., Suite 1700<br>Indianapolis, IN 46204-4302 | Fin Cntr Fcu<br>P.o. Box 26501<br>Indianapolis, IN 46226-0501 |
| Finance Federal Cred U<br>7101 E 56th St.<br>Indianapolis, IN 46226-1377 | Finance Federal Cred U<br>Po Box 26501<br>Indianapolis, IN 46226-0501 | (p)FOCUS RECEIVABLES MANAGEMENT LLC<br>1130 NORTHCHASE PARKWAY STE 150<br>MARIETTA GA 30067-6429 |
| GECRB/JC Penny<br>Attention: Bankruptcy<br>PO Box 103104<br>Roswell, GA 30076-9104 | GECRB/JC Penny<br>Po Box 965007<br>Orlando, FL 32896-5007 | General Revenue Corporation<br>Attn: Bankruptcy Dept<br>4660 Duke Dr S STE 300<br>Mason, OH 45040-8466 |
| Horizon FCU<br>Attn: Bankruptcy Dept.<br>1007 E. Third St.<br>Williamsport, PA 17701-5417 | IRS<br>PO Box 7346<br>Philadelphia, PA 19101-7346 | Indiana Department of Revenue<br>Attn: Bankruptcy Department<br>100 N Senate Ave<br>Indianapolis, IN 46204-2253 |
| Indiana Wesleyan University<br>Attn: Bankruptcy Dept.<br>1900 W. 50th St.<br>Marion, IN 46953-9393 | Marion County Small Claims Pike Township<br>Attn: 49K05-1405-SC-2194<br>5665 Lafayette Rd., Suite B<br>Indianapolis, IN 46254-1007 | Marion Superior Court<br>Attn:49D111406MF020673<br>200 E. Washington St., #W140<br>Indianapolis, IN 46204-3598 |
| Med-1 Sol<br>517 US Highway 31 N<br>Greenwood, IN 46142-3932 | Med-1 Sol<br>6239 S East St Ste F<br>Indianapolis, IN 46227-2088 | Northpoint Villiage Community<br>PO Box 441570<br>Indianapolis, IN 46244-1570 |
| PennyMac Loan Services, LLC<br>Attn: Bankruptcy Dept.<br>PO Box 660929<br>Dallas, TX 75266-0929 | PennyMac Loan Services, LLC<br>C/O Aldridge Connors, LLP<br>Fifteen Piedmont Center<br>3575 Piedmont Road, N.E., Suite 500<br>Atlanta, GA 30305-1636 | Pnc Bank<br>2730 Liberty Ave<br>Pittsburgh, PA 15222-4747 |

| | | |
|---|---|---|
| Robert D Roache<br>130 3rd St NW<br>Carmel, IN 46032-1728 | TransUnion<br>Attn: Bankruptcy Dept.<br>PO Box 2000<br>Chester, PA 19016-2000 | U.S. Attorney's Office<br>10 W Market St Ste 2100<br>Indianapolis IN 46204-1986 |
| U.S. Trustee<br>Office of U.S. Trustee<br>101 W. Ohio St.. Ste. 1000<br>Indianapolis, IN 46204-1982 | Us Bank Home Mortgage<br>4801 Frederica St<br>Owensboro, KY 42301-7441 | Avanti Renee McDamon Freeman<br>6907 Chrysler St.<br>Indianapolis, IN 46268-2407 |
| Dana L. Oglesby<br>Jackson & Oglesby Law LLC<br>6520 E. 82nd St., Suite 101<br>Indianapolis, IN 46250-3589 | John J. Petr<br>Office of John J. Petr<br>111 Monument Cir Ste 900<br>Indianapolis, IN 46204-5125 | |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

| | | |
|---|---|---|
| Capital 1 Bank<br>Po Box 85520<br>Richmond, VA 23285 | Focus Receivables Mana<br>1130 Northchase Parkway Suite 150<br>Marietta, GA 30067 | (d)Focus Receivables Mana<br>1130 Northchase Pk<br>Marietta, GA 30067 |

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)PennyMac Loan Services, LLC

End of Label Matrix
Mailable recipients    37
Bypassed recipients     1
Total                  38

Exhibit A

When Recorded Mail To:

Ryland Mortgage Company, an Ohio Corporation
14555 North Hayden Road #100
Scottsdale, Arizona 85260

Loan Number 
MIN

———————————— [Space Above This Line For Recording Data] ————————————

FHA Case No. 

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **JULY 12, 2004**. The mortgagor is **AVANTI R FREEMAN, AN UNMARRIED WOMAN** ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **RYLAND MORTGAGE COMPANY, AN OHIO CORPORATION** ("Lender") is organized and existing under the laws of **THE STATE OF OHIO**, and has an address of **6300 CANOGA AVENUE, 14TH FLOOR, WOODLAND HILLS, CALIFORNIA 91367**. Borrower owes Lender the principal sum of **ONE HUNDRED FORTY-THREE THOUSAND SEVEN HUNDRED TWENTY-FOUR AND 00/100ths** Dollars (U.S.$**143,724.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **AUGUST 1, 2034**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in **MARION** County, Indiana:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART THEREOF**

which has the address of **8109 BIRCHFIELD DRIVE**                                      , **INDIANAPOLIS**                  ,
                                                        [Street]                                                                      [City]
Indiana _____**46268**_____ ("Property Address");
             [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument. Borrower Initials ARF

GMD 0131 (399)  Page 1 of 6

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security

GMD 0131 (399) Page 2 of 6

Borrower Initials ALF

FHA Indiana Mortgage

Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. Fees. Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

GMD 0131 (399) Page 3 of 6

Borrower Initials ARF

FHA Indiana Mortgage

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 days** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by

Borrower Initials _AKF_

GMD 0131 (399) Page 4 of 6

FHA Indiana Mortgage

UNOFFICIAL COPY

first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorney's fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.

**20. Waiver of Valuation and Appraisement.** Borrower waives all right of valuation and appraisement.

Borrower Initials ARF

GMD 0131 (399) Page 5 of 6

FHA Indiana Mortgage

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Condominium Rider         ☐ Growing Equity Rider        ☐ Adjustable Rate Rider
☒ Planned Unit Development Rider   ☐ Graduated Payment Rider     ☐ Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____      _____Avanti R Freeman_____(Seal)
                                        AVANTI R FREEMAN              -Borrower

_____      _____(Seal)
                                                                      -Borrower

_____(Seal)   _____(Seal)
                          -Borrower                                   -Borrower

STATE OF INDIANA,         Marion                       County ss:

On this 23rd day of July 2004, before me, the undersigned, a Notary Public in and for said County, personally appeared **AVANTI R FREEMAN**, and acknowledged the execution of the foregoing instrument.

WITNESS my hand and official seal.

My Commission Expires:
        Leah D. Long
        NOTARY PUBLIC INDIANA        Notary Public
        SEAL  HAMILTON COUNTY
        My Commission Expires       Print Name
        June 25, 2008               Resident of _____ County, Indiana.

This instrument was prepared by: _or on behalf of Ryland Mortgage Company, an Ohio Corporation_
                14555 North Hayden Road #100, Scottsdale, Arizona 85260

GMD 0131 (399) Page 6 of 6

Loan Number ▮▮▮▮▮
FHA Case No.

▮▮▮▮▮

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 12TH day of JULY, 2004, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **RYLAND MORTGAGE COMPANY, AN OHIO CORPORATION** ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**8109 BIRCHFIELD DRIVE, INDIANAPOLIS, INDIANA 46268**
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

**NORTHPOINT VILLAGE 52306**
[Name of Planned Unit Development]

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

Borrower Initials ARF

GMD 0053 (1095)

(page 1 of 2 pages)

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____(Seal)
AVANTI R FREEMAN                                        Borrower

_____(Seal)
                                                        Borrower

GMD 0053 (1095)                                         (page 2 of 2 pages)

UNOFFICIAL COPY

EXHIBIT "A"

Lot 28, in NORTHPOINT VILLAGE, SECTION ONE, in the City of Indianapolis, Marion County, Indiana, as per plat thereof, recorded December 8, 2003 as Instrument No. 2003-260100, in the Office of the Recorder of Marion County, Indiana.



Exhibit B

| | Loan Number ▓▓▓▓ |
|---|---|
| | FHA Case No. |

# NOTE



JULY 12, 2004
[Date]

8109 BIRCHFIELD DRIVE, INDIANAPOLIS, INDIANA 46268
[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means RYLAND MORTGAGE COMPANY, AN OHIO CORPORATION and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED FORTY-THREE THOUSAND SEVEN HUNDRED TWENTY-FOUR AND 00/100ths Dollars (U.S.$143,724.00), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SIX AND ONE-HALF percent (6.500%) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on SEPTEMBER 1, 2004. Any principal and interest remaining on the first day of AUGUST, 2034, will be due on that date, which is called the maturity date.

(B) Place

Payment shall be made at 6300 CANOGA AVENUE, 14TH FLOOR, WOODLAND HILLS, CALIFORNIA 91367 or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $908.43. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge     ☐ Other [Specify]

☐ Growing Equity Allonge

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent ( 4.000 %) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

Borrower Initials ARF

0040 (1095) Page 1 of 2                                             FHA Multistate Fixed Rate Note

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
AVANTI R FREEMAN                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

PAY TO THE ORDER OF
PennyMac Loan Services, LLC
Without Recourse
Countrywide Home Loans Servicing LP
BY _____
David A. Spector
Managing Director

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS INC.
WITHOUT RECOURSE
COUNTRYWIDE DOCUMENT CUSTODY SERVICES,
A DIVISION OF TREASURY BANK, NA
BY _____
LAURIE MEDER
VICE PRESIDENT

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS SERVICING LP
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC
BY _____
David A. Spector
Managing Director

A201400046389

05/28/2014 07:30 AM
JULIE L. VOORHIES
MARION COUNTY IN RECORDER
FEE: $ 17.50
PAGES: 2
By: ER

**ASSIGNMENT OF MORTGAGE**

MERS MIN: ▓▓▓▓▓▓▓▓  MERS Phone: 1-888-679-6377

For value previously received, Mortgage Electronic Registration Systems, Inc., as nominee for Ryland Mortgage Company, its successors and assigns, hereby assigns to PennyMac Loan Services, LLC, at 6101 Condor Drive, Suite 200, Moorpark, CA 93021, the mortgage executed by Avanti R. Freeman to Mortgage Electronic Registration Systems, Inc., as nominee for Ryland Mortgage Company on July 12, 2004, in the amount of $143,724.00, which said mortgage was recorded in the Recorder's Office in Marion County, Indiana, on August 9, 2004, as Instrument No. 2004-0155530.

WITNESS, my hand and seal this 7TH day of MAY, 2014.

Mortgage Electronic Registration Systems, Inc., as nominee for Ryland Mortgage Company, its successors and assigns,

By: _____

Printed: Michael Drawdy

Title: Assistant Secretary

STATE OF _____ )
                 )SS:
COUNTY OF _____ )

Before me, a Notary Public in and for said County and State, this ___ day of _____, 2014, personally appeared _____ for and on behalf of Mortgage Electronic Registration Systems, Inc., as nominee for Ryland Mortgage Company, its successors and assigns, and acknowledged the execution of the foregoing instrument for the uses and purposes therein set forth as the free act and deed of said corporation.

*See Attached*

_____
Notary Public

My Commission Expires:

_____

(Printed)
Residing in _____ County

Avanti R. Freeman - PEML. File No ▓▓▓▓

This instrument prepared by: Susan M. Woolley
Feiwell & Hannoy, P.C.
251 N. Illinois Street, Suite 1700
Indianapolis, IN 46204-1944

# ACKNOWLEDGMENT

State of California
County of _____Ventura_____)

On __MAY 7,__ 2014 before me, __Frank Michael Hoff, Notary Public__
(insert name and title of the officer)

personally appeared _____Michael Drawdy_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

FRANK MICHAEL HOFF
Commission # 1922568
Notary Public - California
Los Angeles County
My Comm. Expires Jan 21, 2015